Opinion issued March 1, 2007 















In The

Court of Appeals

For The

First District of Texas






NOS. 01-06-00083-CR, 01-06-00113-CR, & 01-06-00114-CR

__________


GUADALUPE LERMA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 268th District Court

Fort Bend County, Texas

Trial Court Cause No. 40504






MEMORANDUM OPINION

 A jury found appellant, Guadalupe Lerma, guilty of the offense of aggravated
sexual assault of a child (1) and two separate offenses of indecency with a child. (2) After
appellant pleaded true to the allegations in three enhancement paragraphs that
appellant had three prior felony convictions, the jury assessed his punishment at
confinement for thirty-three years in the aggravated sexual assault case, twenty-five
years in the first indecency with a child case, and thirty years in the second indecency
with a child case. In three issues, appellant contends that the evidence is legally and
factually insufficient to support his conviction for the offense of aggravated sexual
assault and, in all three cases, that the trial court "erred in granting the State's motion
to excuse a venireman for cause over the objection of counsel."

 We affirm. Factual and Procedural Background

 The complainant, who was fourteen years old at the time of trial, testified that
at the end of her school year in 2004, she lived in an apartment with her mother,
appellant, who was her mother's boyfriend, and her sister. She stated that, around
this time, when she was thirteen years old, appellant tickled her breasts with his
hands, both above and under her clothing, and this made her uncomfortable. The
complainant explained that appellant would also touch her private part, "the part that
you pee out of," both over and under her clothes. In regard to the issue of
penetration, the complainant testified as follows:

 [State]: Okay. And when he touched your private part with
his hands underneath your pants, your shorts and
your panties, on your private part, is there like an
inside and outside of your private part?


 [Complainant]: I don't -


 [State]: Do you understand what I'm saying. Is there a part
like, on the outside of your private part and then
there's a part like it's inside your private part?


 [Complainant]: Outside.


 [State]: So he would touch you on the outside of your
private part?


 [Complainant]: Yes.


 [State]: Did his fingers ever go on the inside of your private
part?


 [Complainant]: No.


The complainant stated that she told her pastor, Sandra Cerda, about what appellant
was doing and later met with a lady at the Children's Advocacy Center ("CAC"). On
cross-examination, the complainant agreed that she did not get along with her mother,
she thought her mother was "crazy," and she resented the fact that her mother brought
men to their house. The complainant also agreed that after the assault, she wrote a
letter to appellant, but the complainant asserted that she did so on her mother's
instructions. 

 Cerda testified that she had, over a period of several years, developed a rapport
with the complainant at their church, and the complainant felt that she could confide
in Cerda. In May 2004, Cerda noticed that the complainant had become quiet, "had
distanced herself from the youth," and was "more solemn." The complainant
approached Cerda and asked her to pray for her. When Cerda asked the complainant
what was happening, the complainant's eyes "welled up with tears." Several services
later, the complainant again asked Cerda to pray for her, and Cerda noticed that the
complainant was "still a little distant" and would not "be specific." At Cerda's
suggestion, the complainant began to write notes to Cerda, and Cerda became
concerned with what was happening in the complainant's home. 

 Cerda then approached the complainant, and the complainant told her that
appellant, her mother's boyfriend, who she referred to as "Lupe," was "touching her
inappropriately" "on her chest area" and "in her genitals," usually late at night when
her mother was asleep in another room. Cerda then "immediately questioned [the
complainant] as far as penetration," and the complainant said, "he did not." The
complainant was trembling, weeping, nervous, and "very embarrassed." The
complainant further told Cerda that there was one time "when he did lay on her."

 On cross-examination, Cerda stated that the complainant had told her that her
pajamas were on "when this happened." Cerda agreed that the complainant was
emotionally immature. Cerda also agreed that she doubted the truthfulness of the
complainant's claim because she "had from time to time in the past accused boys of
trying to kiss on her," and would later recant these accusations. After the instant
allegations surfaced, Cerda kept her sons away from the complainant. Cerda was also
doubtful of the complainant's claim because the complainant had alleged that another
person had engaged in sexual contact with her and that she "was real giddy, like not
serious" when telling Cerda about this contact. Based on these incidents, Cerda
stated that she questioned the complainant's credibility. However, Cerda agreed that
when making the instant allegations against appellant, the "emotional part of [the
complainant] was very different." Cerda reported the complainant's allegations to the
complainant's school counselor. 

 Valeria Brock, a forensic interviewer at the CAC and a former investigator for
Children's Protective Services ("CPS"), testified that she investigated the sexual
assault, she observed visits between the complainant's mother and the complainant
at CPS's offices, and during these visits the complainant's mother would try to get the
complainant to recant her allegations against appellant.

 Jennifer Lemke, a former forensic interviewer at the CAC, testified that, on
May 21, 2004, she conducted a videotaped forensic interview of the complainant. 
Lemke stated that the complainant, who had a difficult time understanding her
questions, told Lemke that appellant was her mother's boyfriend and he tickled her
on her breasts and "private part," which the complainant described as the part "she
pees from." The complaintant also told her that the touching was under her clothes
and appellant penetrated her vagina with his hand. On cross-examination, Lemke
agreed that the complainant seemed "a little bit behind" for her age and it was
difficult to get a specific, accurate answer from the complainant in response to some
of her questions. The State then introduced a copy of the videotaped interview into
evidence. 

 Denise Volet, a licensed professional counselor, testified that she provided
counseling services to the complainant and her mother from July 2004 to February
2005. The complainant told Volet that appellant touched her on her chest and private
part. Volet explained that although the complainant's mental abilities were below her
age and grade equivalent, her outcry remained fairly consistent. On cross-examination, Volet agreed that although the complainant had told her that appellant
touched her on top of and under her clothing, the complainant never told Volet that
appellant had penetrated her. Volet admitted that during her sessions with the
complainant, she had attempted to address, among other things, the complainant's
behavioral problems of lying and being manipulative. However, in her opinion, the
complainant was not lying regarding her allegations against appellant.

 Gloria Adami, the complainant's cousin, testified that while she was walking
in the park with the complainant after the incident, the complainant told her that
appellant did not do anything to her. Under-cross examination, Adami asserted that
the complainant had instead made these statements, at least in part, during a telephone
conversation.

 Legal and Factual Sufficiency

 In his first and second issues, appellant argues that the evidence is legally and
factually insufficient to support his conviction for aggravated sexual assault of a child
because the complainant testified that appellant "did not penetrate her sexual organ."

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt.
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The trier of fact
is the sole judge of the weight and credibility of the evidence. Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal
sufficiency review, we may not reevaluate the weight and credibility of the evidence
and substitute our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999).

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
jury's verdict seems "clearly wrong and manifestly unjust," or the proof of guilt,
although legally sufficient, is nevertheless against the great weight and preponderance
of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). 
In performing a factual sufficiency review, we are to give deference to the fact
finder's determinations, including the determinations involving the credibility and
demeanor of witnesses. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
We may not substitute our judgment for the fact-finder's. Watson, 204 S.W.3d at
414-15.

 A person commits the offense of aggravated sexual assault of a child (3)
 if the
person intentionally or knowingly causes the penetration of the anus or sexual organ
of a child by any means, and the child is younger than fourteen years of age. Tex.
Pen. Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2006). Proof of the
slightest penetration is sufficient. Nilsson v. State, 477 S.W.2d 592, 595 (Tex. Crim.
App. 1972); Jordan-Maier v. State, 792 S.W.2d 188, 190 (Tex. App.--Houston [1st
Dist.] 1990, pet. ref'd).

 Appellant's only argument regarding the legal and factual sufficiency of the
evidence is that the complainant "specifically stated that appellant never penetrated
her female sexual organ." The complainant, during direct examination, did agree that
appellant would touch her "on the outside of [her] private part" and that appellant did
not place his fingers "on the inside of [her] private part." However, prior to
answering the State's questions, the complainant expressed some confusion regarding
what constituted the "inside" and "outside" of her private part. 

 The complainant also clearly stated during her direct examination that appellant
tickled her genitals and touched her private part, which she described as "the part that
you pee out of," both outside and inside her clothing. Lemke, the forensic
interviewer, noted that although she had a difficult time interviewing the complainant
because of a variety of factors, the complainant had reported to her that appellant
touched her "under her clothes" and "penetrated her vagina with his hand." See
Villalon v. State, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) (stating that court
should consider "all of the evidence, both outcry and non-outcry, admitted at trial"
in determining whether evidence of penetration sufficient). Lemke's testimony is
supported by the complainant's videotaped interview, which was introduced into
evidence, in which the complainant states that appellant had penetrated her private
part with his fingers. Furthermore, Cerda testified that the complainant told her that
appellant had touched her "in her genitals." 

 Viewing all the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Accordingly, we hold that the evidence is legally
sufficient to support appellant's conviction for the offense of aggravated sexual
assault of a child.

 In regard to the factual sufficiency challenge, again, appellant's only complaint
is that the complainant, on direct examination, denied that appellant penetrated her
sexual organ. Moreover, Cerda, the complainant's pastor, testified that the
complainant denied that appellant had penetrated her, but also told her that appellant
touched her "in her genitals." Cerda testified that she doubted the complainant's
credibility, but conceded that the complainant behaved differently when she reported
the sexual abuse by appellant. Although Volet stated that the complainant never
reported to her that appellant penetrated her, Volet never asked the complainant
whether penetration had occurred. Finally, Adami testified that the complainant had
recanted the allegations against appellant, but on cross-examination Adami changed
her testimony as to when the complainant made these alleged recantations. 

 The jury heard the above testimony, as well as the testimony from Lemke
regarding penetration, and watched the videotaped interview in which the
complainant stated that appellant penetrated her private part with his fingers. The
jury also heard Lemke's testimony that, prior to trial, the complainant's mother had
pressured the complainant to recant her allegations against appellant. As the sole
judge of the credibility of witnesses and the weight to be given to their testimony, the
jury was entitled to resolve any credibility issues against appellant. See Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Cain, 958 S.W.2d at 408-09; Robles
v. State, 104 S.W.3d 649, 652 (Tex. App.--Houston [1st Dist.] 2003, no pet.). The
jury was also free to believe or disbelieve the defensive theory that the complainant
made false accusations against appellant because she resented the fact that her mother
brought men to their house and because she desired a different living environment. 
 We conclude, viewing the evidence neutrally, that the evidence is not so weak
that the verdict is clearly wrong or manifestly unjust or that the proof of guilt is
against the great weight and preponderance of the evidence. Accordingly, we hold
that the evidence is factually sufficient to support appellant's conviction for the
offense of aggravated sexual assault of a child.

 We overrule appellant's first and second issues. 


Venireman Excused for Cause

 In his third issue, appellant argues that the trial court erred in granting the
State's challenge for cause of juror number eleven because her statement that she had
a problem with the maximum length of the sentence for the offense did "not indicate
a bias toward the law or a party and [was] therefore an insufficient reason to excuse
her for cause." 

 To show error in a trial court's grant of a state's challenge of a potential juror
for cause, a defendant must demonstrate one of two things: (1) the trial judge applied
the wrong legal standard in sustaining the challenge or (2) the trial judge abused his
discretion in applying the correct legal standard. Jones v State, 982 S.W.2d 386, 388
(Tex. Crim. App. 1998). The erroneous excusing of a potential juror will call for
reversal only if the record shows that the error deprived the defendant of a lawfully
constituted jury. Id. at 394.

 During the State's voir dire, the State asked the panel members if something
would keep them from being fair and impartial jurors. Juror number twenty-four
stated, "I have a problem with the length of the sentence, the maximum length." 
When pressed as to whether he could consider the maximum sentence in this kind of
case "under any circumstances," juror number twenty-four again stated, "I have a
problem with that. I work in the prison ministry and life is a long time." He then
affirmatively stated, "I could not consider that length of time." Juror number eleven
then immediately stated, "I have the same problem and I am also active in the prison
ministry." The trial court granted the State's challenges for cause as to both jurors
eleven and twenty-four on the ground that they could not consider the full range of
punishment. 

 A challenge for cause may be made by the State if the potential juror has a
"bias or prejudice against any phase of the law upon which the State is entitled to rely
for conviction or punishment." Tex. Code Crim. Proc. Ann. art. 35.16(b)(3)
(Vernon 2006). Any prospective juror unable to consider the maximum penalty
allowed by law for all legally eligible candidates is biased or prejudiced against law
and, therefore, subject to a challenge for cause. Fuller v. State, 829 S.W.2d 191, 200
(Tex. Crim. App. 1992), overruled on other grounds by Castillo v. State, 913 S.W.2d
529 (Tex. Crim. App. 1995). We give great deference to the trial judge, who is
present during voir dire and can observe the demeanor of the venireperson and hear
the tone of his voice. See Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App.
2002). When a veniremember either vacillates or equivocates on her ability to follow
the law, an appellate court defers to the trial court's judgment on the challenge for
cause. Granados v. State, 85 S.W.3d 217, 231 (Tex. Crim. App. 2002).

 Here, the record shows that juror number eleven, in accord with juror number
twenty-four, stated that she would be unable to consider the full range of punishment
under any circumstances, thus showing bias or prejudice against a punishment law
on which the State was entitled to rely. Accordingly, we hold that the trial court did
not abuse its discretion in granting the State's challenge for cause as to juror number
eleven.

 We overrule appellant's third issue. 

Conclusion

 We affirm the judgment of the trial court.


 

 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. See Tex. R. App. P. 47.2(b).

1. See Tex. Pen. Code Ann. §§ 22.021(a)(1)(B)(i), 22.011(c)(1) (Vernon Supp. 2006). 
Trial court cause no. 40504; appellate cause no. 01-06-00083-CR.
2. See id. § 21.11 (Vernon 2003). Trial court cause no. 40504; appellate cause nos.
01-06-00113 & 01-06-00114-CR.
3. "Child" means a person younger than 17 years of age who is not the spouse of the
actor. See Tex. Pen. Code Ann. § 22.011(c)(1).